UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
ABILENE DIVISION

| | |
|---|---|
| RAUL BENITEZ REYES, <br><br> Petitioner, <br><br> v. <br><br> JOSHUA JOHNSON, et al., <br><br> Respondents. | No. 1:26-CV-026-H |

# **ORDER**

Before the Court is Raul Benitez Reyes's petition for a writ of habeas corpus (Dkt. No. 1). Benitez Reyes illegally entered the United States two decades ago. ICE detained him in October 2025 and is holding him without bond. He contends that the Central District of California's orders in *Maldonado Bautista v. Santacruz*, No. 5:25-CV-1873, entitle him to a bond hearing. But as the Court previously explained, it is not bound by the advisory opinions in *Maldonado Bautista*. *Calderon Lopez v. Lyons*, ___ F. Supp. 3d ___, 2025 WL 3683918, at *7–11 (N.D. Tex. Dec. 19, 2025). And under the Court's prior decision in *Montelongo Zuniga v. Lyons*, Benitez Reyes is an "applicant for admission" who must be detained without bond under Section 1225(b)(2)(A) of the INA. *See* ___ F. Supp. 3d ___, 2025 WL 3755126, at *3–5 (N.D. Tex. Dec. 29, 2025).

Because the legal arguments and facts presented in the petition are indistinguishable from those addressed in the Court's prior decisions denying relief, "it appears from the application that the applicant or person detained is not entitled" to a writ of habeas corpus. 28 U.S.C. § 2243. Thus, while the Court would ordinarily issue an order to show cause, it exercises its discretion to forgo that step here. *Id.*; *see Wottlin v. Fleming*, 136 F.3d 1032, 1034 (5th Cir. 1998). The petition (Dkt. No. 1) is denied.

1.   **Background**

Benitez Reyes is a native and citizen of Mexico. Dkt. No. 1-1 at 3. In 2005, he illegally entered the United States at an unknown location and has remained here since. Dkt. No. 1 ¶ 19. In October 2025, ICE detained Benitez Reyes and placed him into removal proceedings. *Id.*; Dkt. No. 1-1 at 3. He is currently detained at the Bluebonnet Detention Center in Anson, Texas. Dkt. No. 1 ¶ 1. A Notice to Appear charged him with removability as an alien present in the United States without having been admitted and without a valid entry document. Dkt. No. 1-1 at 3; *see* 8 U.S.C. §§ 1182(a)(6)(A)(i), (a)(7)(A)(i)(I).

After being detained, Benitez Reyes requested a bond hearing before an immigration judge. Dkt. No. 1 ¶ 19. On January 12, 2026, an immigration judge denied his petition citing a lack of jurisdiction. Dkt. No. 1-1 at 7–9. He did so in reliance on the Board of Immigration Appeals' recent decision in *Matter of Yajure Hurtado*, holding that aliens present in the United States without admission must be detained without bond under Section 1225(b)(2)(A) of the INA for the duration of their removal proceedings. 29 I. & N. Dec. 216, 220 (BIA 2025).

On January 16, 2026, Benitez Reyes filed a petition for a writ of habeas corpus. Dkt. No. 1. The petition raises a single ground for habeas relief: that Benitez Reyes is part of a class action certified by the Central District of California in *Maldonado Bautista v. Santacruz*. *See* 5:25-CV-1873, 2025 WL 3289861 (C.D. Cal. Nov. 20, 2025) (granting declaratory relief to petitioners). There, the Central District purported to require bond hearings for a Bond Eligible Class consisting of all present and future aliens who entered or will enter the country illegally without being caught, subject to certain limited exceptions. *See* 5:25-CV-

1873, 2025 WL 3288403, at *9 (C.D. Cal. Nov. 25, 2025) (class-certification order). In a later order, the Central District said that it was vacating an internal government policy mandating detention without bond. *See* ___ F. Supp. 3d ___, 2025 WL 3713982, at *4 (C.D. Cal. Dec. 18, 2025). It did not, however, vacate *Yajure Hurtado*. *Id.* at *3.[1]

### 2.    Legal Standard

"[A]bsent suspension, the writ of habeas corpus remains available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const. art. I, § 9, cl. 2). With 28 U.S.C. § 2241, Congress authorized federal courts to resolve habeas petitions, including in immigration-detention cases. *Zadvydas v. Davis*, 533 U.S. 678, 687–88 (2001). Habeas exists solely to "grant relief from unlawful imprisonment or custody." *Pierre v. United States*, 525 F.2d 933, 935–36 (5th Cir. 1976). Thus, for the writ to issue, the petitioner must be "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); *see Orellana v. Kyle*, 65 F.3d 29, 31 (5th Cir. 1995). A court considering a habeas petition must "determine the facts, and dispose of the matter as law and justice require." 28 U.S.C. § 2243.

### 3.    Analysis

At its heart, this case involves the interplay between two related statutes. First is Section 1225(b)(2)(A), the INA's mandatory-detention provision. That statute sets out detention requirements for "applicant[s] for admission" to the United States. 8 U.S.C. § 1225(b)(2)(A). Specifically, "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly

---

[1] The Court previously considered additional briefing on the issue raised by Benitez Reyes from both the United States' and detainee's perspective. *See, e.g.*, *Calderon Lopez v. Lyons*, No. 1:25-CV-226, Dkt. Nos. 9; 11 (N.D. Tex.).

– 3 –

and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title." *Id.* Subject to certain narrow exceptions,[2] Section 1225(b)(2)(A) "mandate[s] detention of applicants for admission until certain [removal] proceedings have concluded." *Jennings v. Rodriguez*, 583 U.S. 281, 297 (2018). Nothing in Section 1225 "says anything whatsoever about bond hearings." *Id.*

Section 1226(a), on the other hand, permits discretionary detention. "On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a). Instead of detention, the Attorney General "may" release the alien on bond, "[e]xcept as provided in subsection (c)." *Id.* § 1226(a), (2)(A)–(B). Section 1226(c) in turn requires the Attorney General to "take into custody any alien" who is inadmissible or removable for involvement in certain criminal offenses. *Id.* § 1226(c)(1)(A)–(E); *see Jennings*, 583 U.S. at 303. If Section 1226(c) does not apply, and if an alien is released on bond pending removal, the Attorney General may still re-detain him "at any time." 8 U.S.C. § 1226(b).

For many years, the government provided bond hearings under Section 1226(a) to aliens who entered the United States without admission and resided here illegally, often for decades. Then, in July 2025, the U.S. Department of Homeland Security distributed an internal policy (which was later leaked) titled "Interim Guidance Regarding Detention Authority for Applicants for Admission." *See Maldonado Vazquez v. Feeley*, ___ F. Supp. 3d

---

[2] The Secretary of Homeland Security may temporarily parole into the United States "any alien applying for admission" on a "case-by-case basis for urgent humanitarian reasons or significant public benefit." 8 U.S.C. § 1182(d)(5)(A); *see Biden v. Texas*, 597 U.S. 785, 806 (2022). But once the purposes of the parole have been served, the alien must immediately be returned to custody, and his case "shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States." 8 U.S.C. § 1182(d)(5)(A).

\_\_\_, No. 2:25-CV-1542, 2025 WL 2676082, at *5 & n.2 (D. Nev. Sept. 17, 2025) (describing the leaked DHS policy and noting that the government did not contest its authenticity).  The policy advised that DHS, in coordination with the U.S. Department of Justice, "revisited its legal position" and concluded that Section 1225, not Section 1226, "is the applicable immigration detention authority for all applicants for admission." *ICE Memo: Interim Guidance Regarding Detention Authority for Applications for Admission*, AILA Doc. No. 25071607, Am. Immigr. Laws. Ass'n (July 8, 2025).[3]  Thus, DHS maintained the position— which the BIA later adopted in *Yajure Hurtado*, 29 I. & N. Dec. at 220—that all aliens who entered the country without admission are ineligible for bond.

The BIA acknowledged in *Yajure Hurtado* that "for years Immigration Judges have conducted bond hearings for aliens who entered the United States without inspection." *Id.* at 225 n.6.  But it did "not recall either DHS or its predecessor, the Immigration and Naturalization Service," ever challenging that practice. *Id.*  After reviewing the parties' contentions, the BIA determined that immigration judges lack authority to grant bond hearings to aliens who enter the United States without admission. *Id.* at 229.  Thus, two independent agency actions—the DHS policy and the BIA decision in *Yajure Hurtado*— concluded that aliens who enter the United States without admission are not entitled to bond hearings.

    **A.**    **The *Maldonado Bautista* class action does not require this Court to grant relief.**

Benitez Reyes's claim rests entirely upon a trio of orders issued by the Central District of California in *Maldonado Bautista v. Santacruz*, No. 5:25-CV-1873.  The *Maldonado*

---

[3] https://www.aila.org/library/ice-memo-interim-guidance-regarding-detention-authority-for-applications-for-admission [https://perma.cc/5GKM-JYGX]

*Bautista* petitioners were aliens detained by ICE during an operation in Los Angeles. *Calderon Lopez*, 2025 WL 3683918, at *2. While the individual petitioners were released in July 2025, the case continued into the fall on the merits. *See id.* at *3.

First, on November 20, 2025, the Central District issued a declaratory judgment stating that the INA's plain text required the petitioners to receive bond hearings pursuant to Section 1226. *Maldonado Bautista v. Santacruz*, No. 5:25-CV-1873, 2025 WL 3289861, at *11 (C.D. Cal. Nov. 20, 2025). The order did not issue any preclusive relief, and the Central District further declined to enter final judgment. *Id.*

Second, on November 25, 2025, the Central District—still retaining jurisdiction over the matter—certified the Bond Eligible Class, in which Benitez Reyes claims membership. *Maldonado Bautista v. Santacruz*, No. 5:25-CV-1873, 2025 WL 3288403, at *9. The purported class consists of all aliens "who (1) have entered or will enter the United States without inspection; (2) were not or will not be apprehended upon arrival; and (3) are not or will not be subject to detention" under Section 1225(b)(1), Section 1226(c), or Section 1231 "at the time [DHS] makes an initial custody determination." *Id.* Upon creating the class, the Central District purported to "extend the same declaratory relief granted to [the] Petitioners to the Bond Eligible Class as a whole." *Id.* Once again, the Central District did not issue preclusive relief or enter a final judgment. *Id.*

Third, on December 18, the Central District entered an order clarifying its relief. The Central District purported to vacate as unlawful the DHS policy to detain illegal aliens under Section 1225 rather than Section 1226. *Maldonado Bautista v. Noem*, No. 5:25-CV-

1873, 2025 WL 3713982, at *4.[4] But it expressly declined to vacate *Yajure Hurtado*—which independently prevents immigration judges from holding bond hearings for non-admitted aliens. *Id.* at *3.

Benitez Reyes—an apparent member of the purported Bond Eligible Class—argues that *Maldonado Bautista* requires the Court to either release him within one day or demand that the respondents provide him a bond hearing under Section 1226(a) within a week. Dkt. No. 1 ¶¶ 10–11. Again, the Court previously addressed and rejected this argument in a lengthy order. *See Calderon Lopez*, 2025 WL 3683918. Nevertheless, the Court will summarize its reasoning. Here, as in *Calderon Lopez*, the Court recognizes that it is unusual to address the authority of another court to resolve claims before it. But doing so is necessary here because Benitez Reyes claims these orders are binding upon this Court. "While the conclusions of another court, when enforced onto a peer court, are generally 'unassailable collaterally,' an exception has always existed for 'lack of jurisdiction.'" *Calderon Lopez*, 2025 WL 3683918, at * 6 (quoting *Treinies v. Sunshine Mining Co.*, 308 U.S. 66, 78 (1939)); *see also Ex parte Watkins*, 28 U.S. (3 Pet.) 193, 202–03 (1830) (Marshall, C.J.) (same). Thus, the Court considers whether the *Maldonado Bautista* orders are binding upon it. For three independent reasons, the orders are legal nullities and are not binding on the Court.

---

[4] That same day, the Central District entered an omnibus opinion recapitulating its discussion in the prior three orders without making substantive revisions to the prior orders. *Maldonado Bautista v. Santacruz*, ___ F. Supp. 3d ___, No. 5:25-CV-1873, 2025 WL 3713987, at *1 n.1 (C.D. Cal. Dec. 18, 2025). Because this order is the only one currently slated for publication in the Federal Supplement, one would be forgiven for mistaking it as the relevant order governing this case. But since the omnibus order merely describes what already happened in the case without making substantive changes, it is the original three orders that are the proper subject of this petition.

First, it is not enough for a court to merely declare something unlawful. The "oldest and most consistent thread in the federal law of justiciability is that the federal courts will not give advisory opinions." *Flast v. Cohen*, 392 U.S. 83, 96 (1968); *see Calderon Lopez*, 2025 WL 3683918, at *7 (discussing the historical pedigree and purpose of the rule). Article III sets forth two parallel requirements to prevent advisory opinions: that the claim before the court is redressable and that the court's judgment—not its opinion—must have the power to "affect the rights of litigants in the case before them.'" *Calderon Lopez*, 2025 WL 3683918, at *8 (quoting *DeFunis v. Odegaard*, 416 U.S. 312, 316 (1974) (further quotation omitted)).

Here, the key question is whether the Central District's relief had any preclusive effect on the parties. In other words, can ICE "detain[] aliens without bond today to the same extent it could on the day before the November 20, November 25, and December 18 orders"? *Id.* at *9. The answer is yes: the Central District's December 18 order "concedes that '[it] does not apply to vacatur of *Yajure Hurtado*'" because the petitioners' complaint did not seek *Yajure Hurtado*'s vacatur. *Id.* (quoting 2025 WL 3713982, at *3). Because *Yajure Hurtado* is binding BIA precedent, all DHS employees are bound to follow its identical command that aliens like Benitez Reyes are subject to mandatory detention. *Id.*; *see* 8 C.F.R. § 1003.1(g)(1).

Any counterargument to the contrary is unpersuasive. The Central District, recognizing its questionable authority in *Maldonado Bautista*, raised three arguments. To begin, it remarked that it believed *Yajure Hurtado* was "no longer controlling" and "no longer tenable" in light of its reasoning. 2025 WL 3713982, at *3. But "that plainly cannot be the case, because the independent BIA decision was not vacated by the December 18 order." *Calderon Lopez*, 2025 WL 3683918, at *9. Thus, "[t]hat remark is nothing more than

mere opinion. And it can only be the Central District's opinion because, as it conceded, it could not grant vacatur of a policy that was not challenged in the petitioner's complaint." *Id.*

Moreover, even assuming the purported vacatur of the DHS policy was within the Central District's authority, vacatur alone does not confer Article III redressability because "redress without substance is no redress at all." *Id.*; *see Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 567 U.S. 209, 224 (2012) (noting that an APA claimant must still satisfy Article III). So long as *Yajure Hurtado* remains in force, the Central District's purported relief is a nullity.

In addition, the Central District cited the Supreme Court's decision in *Haaland v. Brackeen*, 599 U.S. 255 (2023), for the proposition that it is a court's judgment, not its opinion, that remedies an injury and demonstrates redressability. *See Calderon Lopez*, 2025 WL 3683918, at *9. But *Haaland* stands for nearly the opposite principle. While an opinion itself is not what results in preclusion, a purported judgment without preclusive effect is still advisory and thus non-binding. *See* 599 U.S. at 293–94.

Because the Central District's orders do not offer preclusive relief, they are "contrary to Article III's strict prohibition on issuing advisory opinions." *Id.* at *8 (quoting *Haaland*, 599 U.S. at 294 (internal quotation marks omitted)). That alone prevents the Court from considering them.

Second, the INA deprives the Central District of jurisdiction over the purported class action and challenges to the validity of the bond system. One provision, 8 U.S.C. § 1252(e)(3)(A), provides, "Judicial review of . . . section 1225(b) of this title and its implementation is available in an action instituted in the United States District Court for the

District of Columbia," limiting such actions to, among other things, "whether . . . a regulation, or a written policy directive, written procedure issued by or under the authority of the Attorney General to implement such section" is either inconsistent with the INA or otherwise unlawful. Another provision provides that "no court may . . . certify a class under Rule 23 of the Federal Rules of Civil Procedure in any action for which judicial review is authorized under a subsequent paragraph of this subsection"—namely, Section 1252(e)(3)(A). *See* 8 U.S.C. § 1252(e)(1)(B). In other words, both provisions indicate that a challenge to the validity of the DHS policy—as well as a class action to that same end—are only proper in the District for the District of Columbia, not the Central District of California. *See Calderon Lopez*, 2025 WL 3683918, at *10–11.

  The Central District tried to distinguish *Maldonado Bautista* as arising under Section 1226, but the plain language of the complaint and the Central District's own reasoning indicate otherwise. *See id.* To object that one statute (Section 1226) should apply when another is being presently applied (Section 1225) admits that the challenge arises under the latter statute. Given the expansive and unambiguous language of the judicial-review provisions, the Central District lacked statutory authorization to declare the policy unlawful. *See Kiakombua v. Wolf*, 498 F. Supp. 3d 1, 33 (D.D.C. 2020) (Jackson, J.) (noting that the provisions "sweep[] broadly" and encompass "DHS internal memoranda" such as the one challenged in *Maldonado Bautista*).

  Finally, the unusual structure of the purported relief in *Maldonado Bautista* would necessitate one of two courses of action—denying this petition and ordering Petitioner to refile in the Central District or adopting the Central District's reasoning as binding on this Court—both of which would require this Court to rebuke Supreme Court precedent.

*Calderon Lopez*, 2025 WL 3683918, at *12–14. The first approach would suggest that Benitez Reyes's petition should be denied so it can be pursued in the Central District. *Id.* at *12. But doing so would require this Court to ignore the Supreme Court's admonition that "jurisdiction lies in only one district: the district of confinement." *Id.* (quoting *Rumsfeld v. Padilla*, 542 U.S. 426, 443 (2004)). The other approach—treating the Central District's orders as binding on all other district courts—"is even less acceptable than the last." *Id.* at *13. Not only would it act as an end-run on the INA's prohibition against habeas class actions for injunctive relief, *see Garland v. Aleman Gonzales*, 596 U.S. 543, 554–55 (2022), it would also form a type of civil action that strongly resembles the universal injunction, which the Supreme Court rejected in *Trump v. CASA, Inc.*, 606 U.S. 831, 850 (2025).

Thus, the Central District's orders lack authority three times over: because they are advisory, because they were issued in violation of the INA, and because the necessary implications of those orders would require fellow district courts to rebuke the Supreme Court. Because the Central District acted beyond its authority, its orders are "simply void" and cannot bind this Court. *Calderon Lopez*, 2025 WL 3683918, at *6 (quoting *Williamson v. Berry*, 49 U.S. (8 How.) 495, 541 (1850) (further quotation omitted)). And although Benitez Reyes does not challenge the government's underlying statutory construction in his habeas petition, the Court notes that—as an "applicant for admission"— he must be detained without bond under Section 1225(b)(2)(A). *See Montelongo Zuniga*, 2025 WL 3755126, at *5.

**4.     Conclusion**

In sum, the Court is not bound by the Central District's advisory opinions, and it cannot require that Benitez Reyes receive a bond hearing when he is otherwise subject to mandatory detention under the INA. Thus, the petition (Dkt. No. 1) is denied.

The Clerk of Court is directed to serve this Order electronically on the United States Attorney's Office for the Northern District of Texas pursuant to the current Service of Process Agreement for federal habeas petitions under 28 U.S.C. § 2241.

So ordered on January 22, 2026.

_____
JAMES WESLEY HENDRIX
UNITED STATES DISTRICT JUDGE